IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA
WILLIAMSPORT DIVISION

Cleveland Hankerson,
                Petitioner,

                           **1: CV  00-1836**

v.
                          Crim. No.:
                          5:91-Cr-10 (WDO)

Don Romine, Warden U.S.P.
Lewisburg, United States of
America,
                Respondent.

**FILED**
**SCRANTON**

**OCT 17 2000**

PER _____
DEPUTY CLERK

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OF LAW IN SUPPORT OF THE PETITIONER'S
MOTION PURSUANT TO 28 U.S.C. § 2241

**INTRODUCTION**

    Comes now, the petitioner, Cleveland Hankerson, pro se
and respectfully submits that the events which transpired in
the instant case constitute a denial of the petitioner's Due
Process rights, as guaranteed by the Fifth Amendment of the
United States Constitution and a denial of his Sixth Amendment
rights. In short, the petitioner contends that his sentence and
conviction in the instant case should be vacated due to an
intervening change in the law. Further, such errors were not
merely procedural, but substantially infringed upon the petit-
ioner's constitutional right to Due Process of Law and a fair
trial.

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA
WILLIAMSPORT DIVISION


Cleveland Hankerson,           *
                Petitioner,
                               *

                               *

v.                             *      Crim. No.:
                               *      5:91-Cr-10 (WDO)

                               *

Don Romine, Warden U.S.P.
Lewisburg, United States of    *
America,
                Respondent.    *


*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *


MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR
A WRIT OF HABEAS CORPUS


## JURISDICTION

Jurisdiction of this court is invoked pursuant to 28 U.S.C.
§ 2241. See, In Re Dorsainvil, 119 F.3d 245 (3rd Cir. 1997),
(district court located in prisoner's district of confinement
is appropriate court in which to file § 2241 habeas petition
challenging validity of conviction).

I.   The § 2241 is the appropriate remedy for the petitioner's
claims. ——

Generally, a federal prisoner must file a motion pursuant
to 28 U.S.C. § 2255 to challenge his conviction or sentence.
Tripati v. Henman, 843 F.2d 1160 (9th Cir.), cert. denied, 488

U.S. 982 (1988). A § 2255 is the appropriate remedy for violations
that occur at or prior to the time of sentencing. Id. A petition
pursuant to 28 U.S.C. § 2241 is used to challenge the execution
of an individual's sentence. Id.; see also, United States v.
Mittelsteast, 790 F.2d 39 (7th Cir. 1986)(habeas corpus proceed-
ing pursuant to § 2241 is the proper remedy for challenging in-
formation in the PSI). A § 2241 petition is also appropriate if
"it also appears that the remedy by (§ 2255) motion is inadequate
or ineffective to the legality of his detention. Id.; United
States v. Pirro, 104 F.3d 297 (9th Cir. 1997)(holding that delay
in considering a § 2255 motion caused by a pending appeal is not
sufficient to make the § 2255 inadequate or ineffective); see
also, Stirone v. Markley, 345 F.2d 473 (7th Cir. 1963)(suggest-
ing that a § 2255 remedy might be ineffective where the senten-
cing court refuses to hear a § 2255 petition altogether or where
the court delays in hearing the petition inordinately); Triest-
man v. United States, 124 F.3d 361 (2nd Cir. 1997)(holding that
the petitioner could raise his claim in a § 2241 rather than in
a § 2255 because the failure to let him raise this issue in a §
2241 would raise a serious constitutional question and the new
provisions of the AEDPA precluded him from raising the issue in
a § 2255). Triestman, also holding that, where a petitioner claims
on the existing record, that he is innocent of the crime of which
he has been convicted, and § 2255 relief is barred, § 2241 relief
must be available in order to avoid serious constitutional issues.
Id. at 379.

In the present case, the petitioner claims that a § 2255 does not provide an adequate or effective remedy. The petitioner has previously filed a § 2255 motion in the United States District court for the Middle District of Georgia (Macon Division), that was denied. Thereafter, the Supreme Court raise serious question concerning rights to a jury trial and proper notice. Petitioner filed a second petition (§ 2244) which was also denied. Nevertheless, at the present time the petitioner does not have any newly discovered evidence and there are no United States Supreme Court decisions made specifically retroactive to case on collateral review that could assist the petitioner. Therefore, the petitioner admittedly cannot meet the strict procedural requirements for successive petition under 28 U.S.C. § 2255. However, an intervening decision by the United States Supreme Court[*], although not made retroactive to case on collateral review, establishes that the petitioner's sentence and conviction is in violation of the constitution and he may be actually or legally innnocent of his sentence and conviction. See, <u>Bousley v. United States</u>, 140 L.Ed. 2d 828 (1999). In light of the facts and circumstances surrounding this case, the petitioner contends that he should have forum to present these claims. Therefore, a motion pursuant to 28 U.S.C. § 2241 is the appropriate remedy for the constitutional violations which occurred in the petitioner's case, See, <u>Triestman</u>, 124 F.3d at 377-79 (2nd Cir. 1997).

---

[*] <u>Apprendi v. New Jersy</u>, 99-478, 2000 WL 807189 (U.S. June 26, 2000).

In Dorsainvil, supra., the court allowed the petitioner to
pursue habeas relief under § 2241 because an intervening decision
established that the act for which the prisoner was in custody
was not criminal. Id. at 252. That case involved the Supreme
Court's decision in Bailey v. United States, 516 U.S. 137 (1995)
which had been decided after the petitioner had been found guilty.
Because Bailey did not involve a "new rule of constitutional law",
the Bailey petitioner was barred from bring his claims in a
successive § 2255 petition. Dorsainvil, 119 F.3d at 248; see also
28 U.S.C. § 2255(stating explicitly that second or successive
petition is justiciable only if it is based on "newly discovered
evidence" or a "new rule of constitutional law"). Further, be-
cause the petitioner could not have brought his claim prior to
the enactment of AEDPA, and because review of the claim was pre-
cluded by § 2255's successive petition provision, the court found
that § 2241 remained available to avoid serious constitutional
questions. Dorsainvil, 119 F.3d at 251-52.

Petitioner contends that he has stated meritorious claims
that were not raised in his prior § 2255 because it was filed
prior to Apprendi v. New Jersy, U.S. 99-478 (2000 WL 807189),
which sets forth the standard for determining whether a provision
in a criminal statute is a sentencing factor or an element of the
offense. Apprendi, mandates that drug type and amounts set forth
in subsections (b)(1)(A) —— (D) of § 841 must be charged in the
indictment, submitted to the jury and proven beyond a reasonable
doubt, which required under Apprendi to charge a crime and to
trigger an enhanced sentence under 21 U.S.C. § 841. See, United

States v. Crockett, 812 F. 2d 626, holding the government must

allege in the indictment the quantity of controlled substance

involved in order to trigger the enhanced sentencing provision

of § 841. Nonetheless, as will be discussed in the following

sections, the government failed to charge the amount of drugs in

the indictment, failed to submitted the amount of drugs to jury

and failed to establish the amount of drugs beyond a reasonable

doubt, which is required under Apprendi to trigger an enhanced

sentence or to charge a crime under 21 U.S.C. § 841. Accordingly,

the petitioner is actually or legally innocent of his conviction

and sentence under § 841, thus the conviction must be vacated.

Therefore, in light of all the reasons discussed above, the

petitioner contends that a § 2255 is inadequate or ineffective

to raise his claims and the proper remedy for his claims is a

§ 2241 motion.

II.    The Sumpreme Court's Recent Decision In
Apprendi v. New Jersey, No. 99-478, Com-
pels That Petitioner's Conviction/Sen-
tence Must Be Vacated.

Holding an evidentiary hearing is a minimal remedy given

the Supreme Court's holdings in Apprendi, as it apply to the

facts of this case.  If Petitioner shows that in light of the

record, the jury, nor any of the officers of the court correct-

ly understood the essential elements of the crime with which

they were charge, then their convictions are invalid under the

Federal Constitution and conviction must be vacated.  See,

Bousley v. United States, 523 US ___(1998).

The Supreme Court's recent decision in Apprendi, compels

that the Petitioner is actually or legally innocent of his

sentence.  Moreover, it makes clear that the indictment failed

to charge a crime.  Notable, Apprendi was unavailable to Pe-

titioner during trial, appeal and for prior § 2255 motion.

The court in Apprendi, expressed serious doubt concerning

the constitutionally of allowing penalty enhancing findings to

be determined by a judge by a preponderance of the evidence,

citing Jones v. United States, 526 US 227 (1999).  The Supreme

Court held that the right to due process of law and the right

to a jury trial read together, indisputably entitle a defendant

to a jury determination that he is guilty of every fact that

increases the penalty of the crime beyond the prescribed statu-

tory maximum.

Applying the analysis of Apprendi to the facts of this

case, it becomes conspicuously clear that the court in United

individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity" N.J. Stat. Ann. § 2c:44-3(e) (West Supp. 2000). The Supreme Court held that the New Jersey procedure at issue was unconstitional.

Here, statute 841(a)(1) described by the United States (Government) as a "Controlled Substance Act" also, provides for an "extended term" of imprisment if the trial judge finds, by a preponderance of the evidence, that the defendant pos-sessed a certain type and/or quantity of controlled substance. There is no question that § 841(a)(1), is also unconstitutional, standing alone or charged with § 846. Applying the analysis of Apprendi to the facts of this case, i.e., the indictment. Here, all of the controlled substance violations alleged in the in-dictment clearly failed to charge a crime.

The real issue, though is whether it is a complete mis-carriage of justice to keep a defendant imprisoned beyond the defendant's correct sentence. I think the answer is clear. "[J]ustice consist not only of convicting the guilty by also of assigning them a lawful and just punishment." United States v. Tayman, 885 F.Supp. 832 832 (E.D. Va. 1995). "No court of justice would require a man to serve [...] undeserved years in prison when it knows that the sentence is improper." United States v. Ford, 88 F.3d at 1356 (4th Cir. 1996). This is such a case.

III.   The Petitioner Challenges The Indictment As
       Being Drafted With A Jurisdictional Defect
       In That It Failed To Include All The Elements
       Of The Crime Charged, It Fails To Include
       Essential Facts And Failed To Give Proper
       Notice.

(i)    Purpose Of The Charging Document

The Sixth Amendment confers a right "to be informed of
the nature and cause" of a criminal accusation.  The charging
document must therefore provide notice of the charges, adequate
for preparation of the defense.  Jones v. United States, 526
US 227 (1999)(holding, "under the Due Process of the Fifth
Amendment and the Notice and Jury Guarantees of the Sixth
Amendment, **any fact,** (other than a prior conviction) that in-
creases the maximum penalty for a crime must be charged in an
indictment, submitted to a jury, and proven beyond a reason-
able doubt.")  Id. at 1224, n. 6 (emphasis added).  See also,
Russell v. United States, 396 US 749 (1962).

An indictment is sufficient if it meets two requirements:

       (1)  It contains the elements of the offense
    and contains sufficient facts and circumstances
    to fairly inform the accused of the specific
    offense; and

       (2)  It contains sufficient information to
    allow him to plead an acquittal or conviction
    in bar of future procecutions for the same
    offense.

    Hamling v. United States, 418 US 87 (1974).

To these ends, Federal Rules of Criminal Procedure 7(c)
requires "a plain, concise and definite written statment of the
essential facts constituting the offense charged."

10

A deficient charging document, requires a defendant to go
to trial with the chief issue undefined. It enable his convic-
tion to rest on one point and the affirmance of the conviction
to rest on another. It gives the prosecution free hand on
appeal to fill in the gaps of proof by surmise or conjecture.
Russell, supra, at 766.

The indictment secures the Fifth Amendment guarantee "that
the accused is to be tried only on such charges as a grand jury
has returned." Id. at 771. Thus, even if it provides adequate
notice, an indictment is defective unless the grand jury agreed
on the facts constituting each essential element.

"The purpose of this requirement...is to limit [a defen-
dant's] jeopardy to offenses charged by a group of his fellow
citizens acting independently of either prosecuting attorney
or judge. To allow the prosecutor or the court to guess what
was in the minds of the grand jury at the time they returned the
indictment would deprive the defendant of this 'basic protec-
tion". **"For a defendant could then be convicted on the basis
facts not found by, and perhaps not even presented to, the
grand jury which indicted him."** Russell, supra, at 770-71.
See also, Stirone v. United States, 361 U.S. 212 (1960).


(ii)    Conspiracy Count──

Here, Count One of the Indictment reads in relevant part
as follows:

> "...[the name defendants] ...did unlawfully and
> willfully conspire with each other..., knowingly
> and intentionally to possess with intent to dis-

tribute a Schedule II controlled substance, to
wit: a mixture and substance containing a de-
tectable amount of cocaine, that is cocaine
base, all in violation of [21 U.S.C. § 846,
in connection with, 21 U.S.C. § 845(b)]."

21 U.S.C. § 846 reads in full as follows:

>"Any person who attempts or conspires to commit
>any offense defined in this subchapter shall be
>subject to the same penalties as those prescrib-
>ed for the offense, the commission of which was
>the attempt or conspiracy."

Failure of indictment to detail each element of the charged
offense is fatal defect.  United States v. James, 980 F.2d 1314
(9th Cir. 1992).  Indictment that fails to charge all essential
elements of crime must be dismissed.  United States v. Cochran,
17 F.3d 56 (3rd Cir. 1994).  Each essential element of offense
must be alleged in indictment.  United States v. Steele, 117
F.3d 1231 (11th Cir. 1997).  Omission of element from indict-
ment rendered indictment constitutionally defective mandating
dismissal.  United States v. Cote, 929 F. Supp. 364.

Here, the indictment does not allege the agreement to
commit any particular specified offense.  See, United States
v. Shabani, 513 U.S. 225, (the agreement is conspiring when it
is to commit an offense against the United States);  Iannelli
v. United States, 420 U.S. 770 (1995)("conspiracy is an in-
choate offense, the essence of which is an agreement to commit
an unlawful act")  Id.  In the instant case, Hankerson's in-
dictment fails to mention the statute the defendants agreed to
commit.

Where a person is detained for the doing of certain acts
which do not constitute a criminal offense under the law of the

particular jurisdiction, the court is without jurisdiction
and he may be discharged in habeas corpus proceeding. <u>Hyde v.
Shine</u>, 199 U.S. 62 (1905). An indictment may be inquired into
in habeas corpus proceeding for the purpose of determining
whether it states an offense known to the law. <u>United States
v. Koptik</u>, 300 F.2d 19 (7th Cir. 1962).

The ultimate question presented upon an application for
habeas corpus on the ground that the act charged in the in-
dictment does not constitute a crime is not the guilt or in-
nocence of the defendant, but simply whether the court had
jurisdiction. <u>In Re Gregory</u>, 219 U.S. 210 (1911). Here, the
indictment is clearly insufficient on its face, as to the con-
spiracy count, and fails to charge a crime.


(iii)    <u>No Punishment, No Crime And No Objective</u>

Even though subchapter I, part D Section 841(a)(1) is en-
titled as unlawful act and cited as the government's juris-
dicitonal authority to prosecute; no prescribed penalty is
enumerated in Section 841(a)(1). Due Process should not re-
quire one to "speculate as to the meaning of penal statute.
<u>Lanzetta v. New Jersey</u>, 305 U.S. 451 (1939).

It is the punishment prescribed which makes an act a
crime, not mere interdiction of conduct without punishment.
<u>United States v. Martinez-Gonzales</u>, 89 F. Supp. 62; 21 Am. Jur.
2d Criminal Law § 5 (To constitute a crime, the act in question
must ordinarily be one to which is annexed, upon conviction, a
certain specified punishment, and it has been held that statute

declaring an act unlawful, but prescribing no penalty, does not create a crime).

21 U.S.C. § 841(a)(1) reads as follows:

(a)  Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally——

(1)  To manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or

(2)  To create, distribute, or dispense, or possess with intent to distribute or disspense, a counterfeit substance.

To indict Hankerson for violating section 841(a)(1) that has no criminal penalty—— then at the conclusion of trial—— if found convicted—— sentence him pursuant to a preponderance of the evidence standard is unconstitutional.

In Apprendi, supra, a statute described by the state's Supreme Court as a "hate crime" law, provides for an "extended term" of imprisonment if the trial judge finds, by a preponderance of the evidence, that "[t]he defendant in committing the crime acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity." N.J. Stat. Ann § 2C:44-3(e)(West Supp. 2000).  The Supreme Court held the New Jersey Statute to be unconstitutional.

Here, statute 841(a)(1) described by the United States as a "Controlled Substance Act" also, provides for an "extended term" of imprisonment if the trial judge finds, by a preponderance of the evidence, that the defendant possessed a certain type and/or quantity of controlled substance.  There is no

question that § 841(a)(1) is also unconstitutional, standing alone or charged with § 846. Applying the analysis of Apprendi to the facts of this case, i.e., the indictment. Here, all of the controlled substance violations alleged in the indictment clearly failed to charge a crime.

Applying the analysis of Apprendi to the facts of this case it becomes conspicuously clear that the court in United States v. Alvarez, 735 F.2d 461 (Quantity of the substance constitutes a critical element of the offense); United States v. Rigsby, 943 F.2d 631; and the dissenting opinion by Chief Judge Aldisert in United States v. Gibbs, 813 F.2d 596. Were absolutely correct in their observation that the actual type and quantity of a controlled substance is a critical element of the offense un-der 21 U.S.C. § 841. See also, United States v. Crockett, 812 F.2d 626, the government must allege in the indictment the quantity of controlled substance involved in order to trigger the enhanced sentencing provisions of § 841. Id.

Last, but equally relevant, the actual quantity of con-trolled substance involved in this case was not charged in the indictment, not submitted to the jury and not proven beyond a reasonable doubt. Accordingly, the indictment was drafted with a jurisdictional defect in that it failed to include all the elements of the crime charge; and that it was unconstitutionally for this court to remove from the jury the assessment of facts that increase the prescribed range of penalties to which they were exposed.

"Under the Due Process Clause of the Fifth Amendment and

15

the Notice and Jury Trial guarantees of the Sixth Amendment,
any fact (other than prior conviction) that increases the
maximum punishment for a crime must be charged in an indictment,
submitted to a jury and proven beyond a reasonable doubt."
See, Apprendi, supra., citing Jones v. United States, 526 U.S.
227 (1999).

The defendants in the instant case contends that this court
erred when it subjected them to the statutory mandatory minimum
sentences of 21 U.S.C. § 841(b) which were never charged in the
indictment and was determined in full, by a preponderance of
the evidence standard by the sentencing  judge.  Because, under
§ 841, the statutory range of punishment varies according to
type and quantity of controlled substance involved in the
offense, proof of the type and quantity are essential elements
of the offense.  Accordingly, the district court lacked authori-
ty, to impose a mandatory minimum sentence on the defendants
based on quantities of controlled substance not charged in the
indictment and not proven beyond a reasonable doubt.

IV.    DEFENDANT WAS NOT CHARGED BY THE GRAND JURY
AS TO THE (b) PORTION OF TITLE
21 U.S.C. § 841

The courts have recognized two kinds of erroneous departure
from the original indictment of the Grand Jury, each with its
own standards governing prejudice.  An amendment of the indict-
ment occurs when the charging terms of the indictment are alter-
ed, either literally (see Bain, 121 US 1, 7 S.Ct. 781, 30 L.Ed
894 (1887)) or in effect, (see, Stirone, 361 US 218 (1960), note
5) by prosecutor or court after the Grand Jury has passed upon
them.  A variance occurs when the charging terms of the indict-
ment are left unaltered, but the evidence offered at trial
proves facts materially different from those alleged in the in-
dictment.  (See 1 L. Orfield, Criminal Procedure Under the Fed-
eral Rules § 7:63 (1966)).

An amendment is thought to be bad because it deprives the
defendant of his right to be tried upon the charge in the indict-
ment as found by the Grand Jury and hence subjected to its pop-
ular scrutiny.  (See Stirone, supra note 5).  A variance is
thought to be bad because it may deprive the defendant of notice
of the details of the charge against him and protection against
reprosecution.  See, Burger v. United States, 295 US 78 (1935).

Because the leading amendment case of Ex Parte Bain rested
explicitly upon the Constitution, and because it apparently
excludes any notion of a non-prejudicial amendment to the indict-
ment, the concept of harmless error has not been applied to a-
mendments.  However, the strictness of this rule, perhaps incon-
sistent with present notions of efficient administration of

17

Congress' first objective was to ensure that mandatory minimum sentences for Section 841(a) violations, which were first adopted in 1986, would apply to those Section 846 Conspiracies/Attempts whose objectives were to distribute (Manufacture, etc.) quantities and types of drugs which carried mandatory minimums. 134 Cong. Rec. 13, 781-13, 782 (1988). Congress' second objective was to ensure that, other than the term of imprisonment, potential punishments such as special parole (now abolished), would apply equally to substantive offenses and to conspiracies/attempts which had as their objectives the commission of the substantive offense. If the phrase "Object of Offense" in Section 846 were meant only to apply to the broadest, generic description of the offense in Section 841(a)(1), then no legislative amendment would have been necessary to ensure application of the mandatory terms of imprisonment. Under the language of either the old or new version of Section 846, a defendant would be subject to the same imprisonment and fine up to the maximum penalties as provided in the substantive offense. Bifulco v. United States, 477 US 381, 398 (1980)(relying on language of predecessor statute to conclude that Section 846 "authorizes two types of sanctions —— fines and imprisonment —— and fixes the maximum amount that may be imposed by reference to the penalty provisions of the target offense.")

On February 24, 1998, the Supreme Court heard Oral Arguments in Edwards v. United States, 523 US ___, 140 L.Ed 2d 703, 118 S.Ct. ___, (and later decided on other merits), the Court declined to address this particular argument in its decision

but has provided the lower courts with an eye-opening discussion where Justice Scalia stated: "There are no penalties in Section 841(a); therefore, Section 841(a) cannot be the object of the conspiracy under the language in Section 846." When the government responded that the penalties for 841(a) are enumerated in 841(b), Justice Scalia retorted that Section 841(b) then becomes part of the offense. Later in the hearing Assistant United States Solicitor General, Edward C. Dumont, Eaq., at page 14, *34 states:

> ...Even if it were true that we could not impose
> a term of imprisonment, the conviction, the special
> assessment and the record and so on would reflect a
> conviction for a felony, and that felony would be
> defined by 841(a). It would have nothing to do with
> 841(b).

Obviously, the Supreme Court agrees with Defendant's argument, and the Assistant to the Solicitor General's statement above is just about as close as he could come to conceding, without actually saying: "I concede that without putting the defendant on notice in the indictment of the 841(b) subsection of the statute —— the offense defined in 841(a) does not provide for punishment of imprisonment."

For the sake of this argument, Defendant assumes this Court's and the government's position is that the (b) portion of 841 is a sentencing factor and doesn't come into play until a conviction has been obtained. Defendant submits that his right of timely notice and effective notice of the maximum penalty he faces, has been violated in light of the United States Supreme Court's Due Process decisions.

19

"Elementary notions of fairness enshrined in our consti-
tutional jurisprudence dictate that a person receive fair notice
not only of the conduct that will subject him to punishment but
also of the severity of the penalty that a State may impose."
BMW of North American, Inc. v. Gore, ___ US ___, 116 S.Ct.
1589, 1598 (1996); see also, Miller v. Florida, 482 US 423
(1987)(Ex Post Facto Clause violated by retroactive imposition
of revised sentencing guidelines that provided longer sentence
for defendant's crime);Bouie v. City of Columbia, 378 US 347
(1964).  Therefore, "vague sentencing provisions may post con-
stitutional questions if they do not state with sufficient
clarity the consequences of violating a given criminal statute."
United States v. Batchelder, 442 US 114, 123 (1979); see also,
United States  v.  Brown, 333 US 18 (1948).

    Specifically, this principle entitles a defendant to actual
notice of the maximum penalty for the specific conduct charged.
Therefore, one species of the Due Process arises where a sta-
tute includes multiple prohibited acts, each with different
maximum penalties.  Such statutes, and indictments under these
statutes, must clearly specify which penalty provision goes
with which each criminal act to avoid a Due Process infirmity.
For  example, in United States v. Evans, 333 US 483 (1948), a
federal statute clearly criminalized the act of "concealing and
harboring aliens" but it also contained a variety of other pro-
hibited acts and penalty clauses.  Because the statute did not
clearly indicate which penalty was intended for "concealing and
harboring," the court dismissed the indictment.  In so holding,

the court stated that determining the correct maximum punish-
ment for particular acts within a single statute was "a task
outside the bounds of judicial interpretation." Id. at 495.

The indictment in this case cites a generic violation of
841 (a). If this court allows that charge to be broadened by
unlawful means then a constructive amendment of the indictment
has occurred. United States v. Delano, 55 F.3d 720 (2d Cir.
1995)(constructive amendment of indictment occurs when evidence
produced at trial supports crime other than that charged in
indictment); United States v. Darden, 70 F.3d 1507 (8th Cir.
1995)(Instruction that broadens possible bases for conviction
infringes defendant's Fifth Amendment right to a Grand Jury
Indictment). The nature of the conspiracy/attempt alleged is
determined from an examination of the four corners of the
charging instrument. "The precise manner in which an indict-
ment is drawn cannot be ignored, because an important function
of the indictment is to ensure that, in case any other proceed-
ing are taken against [the defendant] for a similiar offense,...
the record [will] sho[w] with accuracy to what extent he may
plead a former acquittal or conviction." Sanabria v. United
States, 437 US 54, 65-66 (1978)(ellipsis and alternations in
original, internal quotations omitted). Another Constitutional
reason for requiring the court to find only what is charged in
the indictment is to enforce the Grand Jury Clause of the
Fifth Amendment. See also, United States v. Neapolitan, 791
F.2d 489, 501 (7th Cir.)("[T]he government through its ability
to craft indictments, is matter of the scope of charged RICO
conspiracy...having set the stage, the government must be

21

case, which leaves the assumption that the conviction rested
on a ground not charged in the indictment or presented to the
Grand Jury.

        Furthermore, actual notice of the maximum is futile unless
the notice is also timely.  In a variety of contexts, that
means that the defendant is entitled to actual notice of the
maximum penalty he may suffer before the proceeding that can
impose that punishment begins.  See Lankford v. Idaho, 500 US
110 (1991)(reversing death penalty case where judge imposed
death penalty at sentencing without notice to defendant and in
disregard of the prosecutor's stated intention not to seek the
death penalty).  For example, a plea is invalid unless the de-
fendant is made aware of the statutory maximum to which he is
exposed before the plea is taken.  McCarthy v. United States,
394 US 459, 467 (1969); see United States v. Evans, 333 US 483
(1948)(holding that it is beyond the court's authority to ju-
dicially interpret a vague indictment); United States v. Pear-
son, 910 F.2d 221, 223 (5th Cir. 1990)(prior to guilty plea,
defendant entitled to notice of applicability of recidivism
statutes that increase maximum penalty), cert. denied, 498
US 1093 (1991); accord United States v Siegal, 102 F.3d 477
(11th Cir. 1996).  Even in the context of the sentencing
Guidelines where sentencing takes place entirely within a
statutory maximum, the Court has held that a defendant was
entitled to notice of the judge's intent to depart upwards
from the Guidelines before the sentencing proceeding began.
Burns v. United States, 501 US 129 (1991)(failure to so in-

terpret Rule 32 would raise a "serious question whether notice
in this setting is required by the Due Process Clause"). Simi-
larly, a defendant who invokes his right to trial by jury has
a right to receive notice before trial of the statutory maxi-
mum he faces for that offense. Just as a defendant cannot
knowingly plead guilty without knowing the statutory maximum
he faces, he cannot choose to proceed to trial without that
information.

Congress provided no penalty provision for a generic vio-
lation of Section 841(a), but only for specific kinds of vio-
lations of Section 841(a). Under Section 841(a), only viola-
tions involving specified narcotics prescribe penalties. For
the reason, a Section 846 conspiracy/attempt premised on a
Section 841(a) violation must incorporate the particular
subdivision of Section 841(b) setting forth the penalty and any
of its statutory maximum enhancements. Only in that way can
Congress' explicit directive that the penalty of a conspiracy
or attempt "to commit any offense" be subject to "the same
penalties as those prescribed for the offense" be carried out.

This understanding of Section 846 also explain why Congress
deemed it necessary for the government to give defendants notice
of a prior drug conviction via a separate information, before
relying on such a conviction to enhance a defendant's sentence,
but did not require such a special procedure for other senten-
cing determining factors, such as the type of drugs. 21 U.S.C.
§ 851(a)("No person convicted of an offense under this part
shall be sentenced to increased punishment by reason of one or

more prior convictions, unless before trial, or before entry
of a plea of guilty, the United States Attorney file an infor-
mation with the court...stating in writing the previous con-
victions to be relied upon"); see also, United States v. Steen,
55 F.3d 1022, 1025-28 (5th Cir.)(holding that because "repeat
offenders face significantly harsher sentences than do first
offenders, Congress intended that defendant's receive notice
of the prior conviction on which the court is relying")(cita-
tion omitted), rehearing and suggestion for rehearing en banc
denied 66 F.3d 324 (5th Cir. 1995), and cert. denied, ___ US
___, 116 S.Ct. 577 (1995); Jones v. United States, 119 S.Ct.
1215 (1999)("Under the Due Process of the Fifth Amendment and
the Notice and Jury guarantees of the Sixth Amendment, **any
fact,** (other than a prior conviction) that increases the max-
imum penalty for a crime must be charge in an indictment, sub-
mitted to a jury, and proven beyond a reasonable doubt")  Id.
at 1224, n. 6 (emphasis added).  Congress assumed, as remains
the prevailing practice, that the indictment identifying the
substantive offense which was the object of the conspiracy
would also identify the (b) subsection at issue in the con-
spiracy/attempt charges.  Therefore, Congress understood Sec-
tion 846 to incorporate the object offense with sufficient
specificity to identify its specific penalty provision, de-
fendants would have constitutionally adequate notice of the
maximum penalty a defendant faced from the face of the indict-
ment itself.

The potential offense for Section 846 include, for ex-

ample, the crime in defined in Section 843.  As with Section
841(a), Section 843(a) is labeled "unlawful Acts" but, despite
its misleading title, sets forth only one of several distinct
crimes incompassed by Section 843.  Section 843(a) governs only
a person "who is a registrant to distribute controlled sub-
stances," while 843(b) defines a separate offense prohibiting
all persons from using a communications facility to commit any
crime within Title 21.  Like Section 841, many other provisions
within the reach of Section 846 set forth the definitions and
requirements for distinct criminal offenses with different
maximum penalties in different subsections.  E.g., 21 U.S.C.
§ 843(b); 21 U.S.C. § 841(b)(1), (2) & (3); 21 U.S.C. § 841
(b)(7)(A).  Several of these subsections carry mandatory mini-
mum sentences as well.  E.g., 21 U.S.C. § 841(b)(1)(A) & (B).
Moreover, all of these offenses require a reference to Section
812, which set forth the criteria and identification of the
five schedule of controlled substances which are regulated un-
der the Drug Abuse Prevention and Control Act.  21 U.S.C. §
821(a).

If the Fifth Amendment Due Process Clause requires, at
bare minimum, notice of the maximum potential penalty before
the onset of jeopardy, then this case is lacking a statutory
maximum penalty.

The government has repeatedly either misunderstood or mis-
represented the nature and execution of Title 21 U.S.C. § 841.
The government asks this court to use only § 841(a) during the
trial phase and not to consider the (b) portion of § 841 until
a conviction has been obtained.  This court cannot determine

what the statutory maximum penalty would be, by simply relying
on the (a) portion.

The plain meaning of Section 846 is confirmed by examining
the language of the general conspiracy statute, because the gen-
eral conspiracy statute also uses the term "the offense," the
commission of which is the object of the conspiracy" to include
a sufficient definition of the offense sufficient to determine
which of the two statutory maximums apply.  18 U.S.C. § 371.
See e.g., Ratzlaf v. United States, 510 US 135, ___ , 114 S.Ct.
655, 660 (1994)("A term appearing in several places in a
statutory text is generally read the same way each time it
appears.").

The government has conceded, elsewhere, that due process
entitles a defendant to notice of the statutory maximum punish-
ment, see, United States v. Carrozza, 4 F.3d 70, 81 (1st Cir.
193), cert. denied, 511 US 1069 (1994)("We agree with the
government that the statutory sentence must be determine by the
conduct alleged within the four corners of the indictment.
Otherwise, a defendant would not know at the time of his
arraignment or change of plea what his maximum sentence would
be on the charged offenses")(emphasis added).

This Court is left with but one choice, and even though
choice isn't exactly the favorite dosage of medicine preferred
to be administered to the government, it is possibly the best
way to stop the unbridled carelessness of U.S. Attorneys in
their constructing of indictments and sloppy ways of dealing
with the Grand Jury's of this country.  When a defendant vio-
lates something so sacred as the constitution, he is expected

27

to be held accountable.   Should U.S. Attorneys be any different?
If so, what does our constitution stand for these days?

Wherefore, Defendant respectfully requests that this
Indictment be dismissed.


Dated:  Sept. 20th, 2000.




                                    Respectfully Submitted,


                                    Cleveland Hankerson
                                    Reg. No.: 83507-020
                                    U.S.P. Lewisburg
                                    P.O. Box 1000
                                    Lewisburg, PA. 17837-1000

# CERTIFICATE OF SERVICE

I, CLEVELAND HANKERSON_____, hereby certify, under the penalty of perjury, that I have mailed a true copy of the foregoing document(s) to those listed below at the address listed with the proper amount of first class post-age prepaid by placing same in the institutional legal mailbox at the United States Penitentiary at Lewisburg, Pennsylvania this __20th day of __SEPT._____, 2000.

This same day I have mailed in the same way an original and _1_ copies of the foregoing documents(s) to the Clerk of the Court.

> MR. MICHAEL T. SOLIS
> U.S. ATTORNEY'S OFFICE
> 433 CHERRY STREET
> MACON, GA.  31201

_Cleveland Hankerson_
MR. CLEVELAND HANKERSON