ORIGINAL

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

CLEVELAND HANKERSON       :
                          :
    vs.                   :   CIVIL NO. 1:CV-00-1836,USDC
                          :   CRIMINAL NO. 5:91-CR-10-MDGA
DONALD ROMINE, Warden     :

GOVERNMENT'S BRIEF IN RESPONSE TO
PETITIONER'S MOTION PURSUANT TO 28 U.S.C. § 2241

COMES NOW the United States of America, by and through its attorney, the United States Attorney for the Middle District of Pennsylvania, pursuant 28 U.S.C. § 2241 and 28 U.S.C. § 2255, the Rules Governing Section 2255 Proceedings, 28 U.S.C. fol. § 2255 (Section 2255 Rules), and this Court's Order, the United States files this brief in response to defendant Hankerson's § 2241 motion and shows the following:

I.  **STATEMENT OF THE CASE**

On October 31, 1991, Petitioner, hereinafter referred to as Defendant, was indicted by a federal grand jury in a five count indictment in the Middle District of Georgia and was charged in four of the counts with the following offenses: Count One, Conspiracy to Possess with Intent to Distribute Cocaine Base; Count Two, Aiding and Abetting the Possession of Cocaine Base with the Intent to Distribute; Count Three, Possession of a Firearm During the course of a Drug Trafficking Offense; Count Five, Possession of a Firearm by a Convicted Felon. (Ex. 1 at 1.)

On December 9, 1991, with the aid of competent counsel, the Defendant proceeded to trial before a jury. On December 11, 1991, Defendant was convicted of Counts One, Two, Three and Five. (Ex. 1 at 8.)

A sentencing hearing was held on April 16, 1992. Defendant received a sentence of life imprisonment and a five year sentence to be served consecutively. (Id. at 9.) This sentence was imposed upon Defendant under the Federal Sentencing Guidelines.

On April 24, 1992, Defendant filed a Notice of Appeal to the Eleventh Circuit Court of Appeals. (Id. at 10.) On March 4, 1994, the Eleventh Circuit Court of Appeals affirmed, per curiam, Defendant's conviction. (Id. at 12.)

On April 28, 1997, Defendant filed his Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255. (Id. at 13.) On July 8, 1997, the District Court denied Defendant's Motion to Vacate. (Id. at 14.) Defendant appealed the denial of his § 2255 motion to the Eleventh Circuit Court of Appeals. (Id.) The Court of Appeals refused to consider Defendant's appeal. (Id.)

On July 26, 1999, Defendant filed a successive § 2255 petition in the District Court for the Middle District of Georgia which was denied on August 5, 1999. (Id. at 17.) Defendant appealed the denial of his successive § 2255 motion to the Eleventh Circuit Court of Appeals. (Id.) The Court of Appeals denied Defendant's certificate of appealability for failure to make a substantial showing of the denial of a constitutional right on March 14, 2000. (Id.)

On October 17, 2000, Defendant, Cleveland Hankerson filed a Motion Pursuant to 28 U.S.C. § 2241 to vacate his conviction imposed in the Middle District of Georgia.[1]

On October 31, 2000, this Court entered an order directing the United States to show cause within twenty (20) days why Defendant's Motion should not be granted. Defendant is currently incarcerated.

## II. STATEMENT OF FACTS

The Defendant's prosecution hinges on the transportation of crack cocaine from Florida to Macon, Georgia. The offenses had their genesis in October, 1990. On that date a juvenile by the name of Joseph Maurice Meredith met co-defendant James Colbert at the Davis Homes housing project in Macon, Georgia. (R5-140[2]). At the time this meeting took place, Colbert was accompanied by individuals who identified themselves as "Cop" and "Terry". (R5-141).

Using street jargon, Mr. Meredith asked the men if they had any crack cocaine for sale. (R5-141). One of the three, Meredith was unsure which one, responded affirmatively. (R5-

---

[1] Defendant has filed this civil action as a Motion Pursuant to 28 U.S.C. § 2241 but in actuality Defendant's motion is really a § 2255 Motion to Vacate Sentence.

[2] Undersigned counsel recognizes that in submitting this response to the petition, the appendix which is cited to has not been filed. The United States Attorney's copy is archived. Should the Court deem it necessary to review the exhibits cited to counsel will retrieve the file. In light of the legal arguments, rather than factual, proffered as a basis to deny the petition, it is possible the Court will not deem such retrieval necessary.

142). A short while later, Meredith met the three men at another location inside Davis Homes. (R5-141, 142). Co-defendant Colbert presented Meredith with a slab of crack cocaine. (R5-142). Upon presentation of the crack cocaine to Meredith, the four men proceeded to a service station where razor blades were purchased for the purpose of cutting up the cocaine. (R5-143). The razor blades and cocaine were taken to the Comfort Inn Motel on Riverside Drive in Macon, Georgia. (R5-144).

Meredith and Colbert cut and bagged the cocaine for distribution. (R5-146,147). It was then taken to the residence of Artherine Dishmond. (R5-148). Ms. Dishmond's residence is located very near to the housing project where Meredith had become acquainted with Colbert. (R5-249).

Meredith approached Ms. Dishmond and asked her if they could use her yard to sell crack cocaine. (R5-151). When Ms. Dishmond asked what she would be paid, Meredith requested Colbert to speak to Ms. Dishmond. (R5-150, 151). While Colbert conversed with Ms. Dishmond, Meredith took the crack cocaine and sold it in the Hawkinsville Community. (R5-151,152). While he was selling this cocaine, he also saw that "Terry" and "Cop" were selling crack in the same vicinity. (R5-152).

Shortly after Meredith had finished selling the cocaine for Colbert, Meredith was invited by Colbert to return to Florida with him, "Cop" and "Terry". (R5-157). Thus began the Florida-Georgia connection for distribution of cocaine in and around the residence of Artherine Dishmond.

Meredith traveled to Riviera Beach, Florida with Greg Staten, "Terry", "Cop" and Colbert. (R5-157,158). Once in Florida, Colbert obtained a quantity of powdered cocaine which he placed inside a Crown Royal bag. (R5-159,160). The cocaine was hidden inside the engine compartment of a pink Cadillac. (R5-160). This vehicle was used to transport the powdered cocaine to the Ambassador Inn on Riverside Drive in Macon, Georgia. (R5-162). "Terry" took possession of the cocaine and had it processed into crack cocaine. (R5-162). It was then taken to another motel on Riverside Drive, the Quality Inn. (R5-166). There is was cut and bagged by Meredith and Colbert. (R5-166). They were observed by "Cop", "Terry", Greg Staten, and "Cadillac" (R5-165,166).

The cocaine was taken to Artherine Dishmond's residence. Co-defendant Troy Lee Brown and Colbert remained at the residence while Meredith, "Cadillac" and Greg Staten took the crack and sold it in the Hawkinsville Community, in Macon, Georgia. (R5-168).

Fast on the heels of this first trip, Meredith received a second invitation to travel to Florida. This offer came from "Terry". (R5-170). Meredith accepted the offer and returned to Riviera Beach, Florida with Colbert, Brown, "Terry", "Cop" and "Cadillac". (R5-170).

The pattern followed on the second trip was similar to that of the first. Terry obtained a cookie of crack cocaine. (R5-173). To insure its proper weight, he used a triple beam scale

3

to gauge its size. (R5-174). While in Florida, Colbert introduced Meredith to an M-1 Carbine known as the Enforcer. (R5-184). However, during the introduction, Colbert referred to the weapon as "his baby". (R5-185). This weapon would play a pivotal role in the narcotics distribution in Macon, Georgia.

Meredith and "Terry" transported the cookie of crack cocaine to Macon, Georgia, on a Greyhound bus. (R5-176). The cocaine was taken to a motel room where it was cut and bagged. (R5-179). It was later sold by Meredith at various spots in the Fort Hill area. (R5-180). Shortly after Terry and Meredith left Florida, Defendant, Colbert, Brown and Barkley traveled to Macon, Georgia in search of Meredith and the cocaine. (R5-285).

The use of motels in the Macon, Georgia area played a key role as staging areas for cutting and bagging the cocaine before it was actually sold on the street. Tomiego Boston and Josie Chappell, both juveniles at the time, were present in a motel room with Brown, Colbert, "Flav", Meredith and "Cadillac" when crack cocaine was cut and bagged for sale on the street. (R5-284).

During the time the trips were being made to Florida, Artherine Dishmond's residence had become the central location for the sale and distribution of the crack cocaine that was being brought from Florida. The distribution occurred on a daily basis from the middle of October, 1990 until the beginning of November, 1991. (R5-182).

The evidence placed each defendant at this location during

the time the cocaine was being sold. Colbert and Meredith stood at the front of the residence and collected drug money from patrons who came to buy crack. After the money had been collected, the addicts traveled down a path which separated Ms. Dishmond's residence from an adjoining house.

Upon their arrival in the back, either Defendant, Jimmy Barkley, Troy Lee Brown or Gregg Staten would give the crack to the customer. (R5-254, 305, 356, 375).

The crack was sold in this manner from twelve noon until one thirty at night. A minimum of sixty to seventy people frequented the area around Ms. Dishmond's residence to buy crack cocaine. (R5-254, 255). In addition to money, addicts also exchanged jewelry and household goods for crack cocaine. (R5-255).

In order to safeguard the illegal drug sales, walkie-talkies were used to alert the sellers to the presence of the police. (R5-358,359,388). At various occasions during the time cocaine was being sold, Defendant, Brown and Colbert had been seen wearing these devices. (R5-186, 262).

On October 31, 1991, three of the defendants were involved in a drive-by shooting at the residence of David Brown, Jr.. (R5-314-316). At approximately 1:00 p.m., David Brown, Jr., David Brown, III, Gregg Staten, Maurice Meredith and several children were seated on the porch of David Brown, Jr.'s residence in Davis Homes. (R5-188,189,315). Defendant, Barkley and Colbert drove up near the apartment in a gold colored automobile. (R5-314). Defendant was armed with what appeared to be a .44

5

caliber pistol. (R5-315). Colbert was armed with the .30 caliber enforcer. (R5-315). Barkley appeared to possess a 9 mm, semi-automatic pistol. (R5-315).

The three men exited their vehicle and opened fire on the individuals on the porch. (R5-316). During the barrage of gun fire, David Brown, III was struck in the leg. (R5-316, 317).

Following the shooting, Brown called Artherine Dishmond and asked her to go to the Holiday Inn to retrieve "their belongings". (R5-259). Although Ms. Dishmond traveled to the motel, she was unable to obtain the Defendants' property. (R5-258).

On November 5, 1990, the hotel manager called the Bibb County Sheriff's Department concerning what appeared to be crack cocaine in Room 319. (R4-83). Upon entering the room, the police officers found a denim jacket which contained a large quantity of crack cocaine. (R4-83,84). The denim jacket matched a denim jacket which Defendant was known to wear daily during the time crack was being sold behind Ms. Dishmond's residence. (R5-264). Other clothing found in the motel room matched outfits which resembled those worn by Colbert, "Flav", "Cadillac" and Troy Lee Brown. (R5-293). The room had been rented by Troy Lee Brown. (R4-67,421). In addition to the clothing, the officers discovered the M-1 "Enforcer" carbine. (R4-89).

On June 18, 1991, members of the Macon Police Department responded to a complaint that crack cocaine was being sold in the area near Artherine Dishmond's house on Norris Street. (R4-121).

A search of the fence line behind Ms. Dishmond's residence led to the discovery of a loaded 9mm pistol. (R4-122). The ammunition in the 9mm pistol was identical to the ammunition found in the Holiday Inn motel room in November 5, 1990. (R4-85).

### III. ARGUMENT AND CITATION OF AUTHORITY

A. PROCEDURAL DEFENSES

1. DEFENDANT IS PROCEDURALLY BARRED FROM BRINGING A SUCCESSIVE MOTION TO VACATE HIS SENTENCE.

Defendant should be barred from bringing a successive petition to vacate his sentence. In 1996, Congress passed the Anti-Terrorism and Effective Death Penalty Act (AEDPA) which created strict gatekeeping procedures for the filing and consideration of second and successive motions to vacate sentence pursuant to § 2255. See 28 U.S.C. § 2244(b). Defendant has previously filed § 2255 motions in the Middle District of Georgia on April 28, 1997 and July 26, 1999. As a result, Defendant's Motion Pursuant to § 2241 should be dismissed since it is an effort by Defendant to circumvent the "gatekeeping" requirements enacted in 1996 by the AEDPA.

Defendant has filed the present motion under § 2241 to avoid the strict gatekeeping procedures of 28 U.S.C. 2244(b). Defendant relies on In re Dorsainvil, 119 F.3d 245 (3rd Cir. 1997) as authority to support his position that he should not be procedurally barred from pursuing the present motion. In Dorsainvil, the Third Circuit held that the defendant could proceed with his motion under § 2241 because the remedy afforded

7

by § 2255 was inadequate and ineffective to test the legality of the defendant's contentions. Id. at 251. The defendant in Dorsainvil was raising an issue under United States v. Bailey, 516 U.S. 137 (1995) claiming that he was innocent of the offense of conviction and that the intervening case from the Supreme Court had decriminalized his behavior. The Dorsainvil Court, however, also held that it was not "eviscerating" the "stringent gatekeeping requirements" of the amended § 2255. Dorsainvil at 251.

In the present case, Defendant is not raising an issue under Bailey. Defendant raises an issue relating to Apprendi v. New Jersey, ___ U.S. ___, 120 S.Ct. 2348 (2000) claiming that the sentence imposed was invalid because the weight of the drugs was not presented to the jury as an issue to be determined beyond a reasonable doubt. Defendant did not raise this issue at trial, before the sentencing court or before any appellate court. Defendant can not claim that he was "actually innocent" of the offense; his issue deals with the sentence that was imposed and as a result he should be precluded from raising the issue on collateral attack.

While the Third Circuit has not addressed whether Apprendi should be applied retroactively, a number of appellate courts have accordingly held that the Apprendi rule, albeit a new rule of constitutional law, may not be applied in a second or successive petition since the Supreme Court has never declared it to be subject to retroactive application. See, e.g., Rodgers v.

8

United States, 2000 WL 1515167 (8th Cir. Oct. 13, 2000) (attached); Talbot v. State of Indiana, 2000 WL 1268166 (7th Cir. Sept. 7, 2000)(attached)("If the Supreme Court ultimately declares that Apprendi applies retroactively on collateral attack, we will authorize successive collateral review of cases to which Apprendi applies. Until then prisoners should hold their horses and stop wasting everyone's time with futile applications."); Sustache-Rivera v. United States, 221 F.3d 8, 15 (1st Cir. 2000). In Sustache-Rivera, the First Circuit held that Apprendi should not be applied retroactively. Id. at 15. In addition, the Court held that the defendant's motion to vacate was procedurally barred by the gatekeeping requirements of the AEDPA. Id. at 14-15. The Sustache-Rivera Court also considered the issue of § 2241 but determined that since the Supreme Court did not specifically hold that Apprendi was retroactive, then the defendant should not be able to proceed with the motion. Id. at 16-17. The Sustache-Rivera Court reasoned that if the Supreme Court later decides to make Apprendi retroactive, then the defendant could raise this issue at that time.

In the present case, Defendant has failed to distinguish himself from the defendant in Sustache-Rivera. Defendant has failed to present any evidence of "acutal innocence" or demonstrate that Apprendi should be applied retroactively.

9

## IV. CONCLUSION

Based on the foregoing facts, the government submits that Defendant's motion pursuant to § 2241 is without merit and should be denied.

Respectfully submitted, this 20th day of November, 2000.

                              DAVID M. BARASCH
                              UNITED STATES ATTORNEY

By:   MICHAEL T. SOLIS
      ASSISTANT UNITED STATES ATTORNEY
      GEORGIA STATE BAR NO. 666480
      433 Cherry Street
      Macon, GA   31202

Of Counsel:   DULCE DONOVAN
             ASSISTANT UNITED STATES ATTORNEY
             Federal Building, Suite 217
             228 Walnut Street
             Harrisburg, PA 17108

229 F.3d 704  
(Cite as: 229 F.3d 704, 2000 WL 1515167 (8th Cir.(Ark.)))

Page 1

United States Court of Appeals,  
Eighth Circuit.

**Alfred Leotis RODGERS, Petitioner,**  
v.  
**UNITED STATES of America, Respondent.**

No. 00-2916.

Submitted: Oct. 6, 2000.  
Filed: Oct. 13, 2000.

Following affirmance of defendant's convictions for conspiracy to distribute cocaine and cocaine base, and for distributing cocaine base, 18 F.3d 1425, the United States District Court for the Eastern District of Arkansas, Henry Woods, J., denied his motion to vacate sentence, the Court of Appeals denied his request for certificate of appealability, and he applied for leave to file second motion to vacate sentence. The Court of Appeals held that a defendant cannot file a second or successive motion to vacate sentence based on the Supreme Court's holding in Apprendi v. New Jersey.

Application denied.

West Headnotes

**[1] Criminal Law** ☞1668(5)  
110k1668(5)

A second or successive petitioner seeking vacatur of sentence may only claim the benefit of a new constitutional rule if the Supreme Court itself makes that rule apply retroactively. 28 U.S.C.A. § 2255.

**[2] Criminal Law** ☞1668(5)  
110k1668(5)

The Court of Appeals lacks the power to adjudge the retroactivity of new rules of constitutional law, for purposes of determining whether a defendant can file a second or successive motion to vacate sentence, without Supreme Court guidance. 28 U.S.C.A. § 2255.

**[3] Criminal Law** ☞1668(6)  
110k1668(6)

A defendant cannot file a second or successive motion to vacate sentence based on the Supreme Court's holding in Apprendi v. New Jersey that any fact which increases a sentence beyond the statutory maximum, other than the fact of a prior conviction, must be pled and proven before a jury beyond a reasonable doubt, inasmuch as the Supreme Court has not made Apprendi retroactively applicable to cases on collateral review. 28 U.S.C.A. § 2255.

**[4] Criminal Law** ☞1668(5)  
110k1668(5)

A new rule of constitutional law has been "made retroactive to cases on collateral review by the Supreme Court," requiring certification of a second or successive motion to vacate sentence, only when the Supreme Court declares the collateral availability of the rule in question, either by explicitly so stating or by applying the rule in a collateral proceeding. 28 U.S.C.A. § 2255.

*705 Alfred Leotis Rodgers, argued, Little Rock, AR, pro se.

Terry L. Derden, Assistant U.S. Attorney, argued, Little Rock, AR, for appellee.

Before: BOWMAN, BEAM, and BYE, Circuit Judges.

PER CURIAM.

**1 Alfred Leotis Rodgers has filed an application for leave to file a second motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. We deny his application.

BACKGROUND

The full story of Rodgers' indictments and eventual conviction is set out in our opinion affirming his conviction. See United States v. Rodgers, 18 F.3d 1425, 1427-28 (8th Cir.1994). For our purposes, it is sufficient to note that he was convicted of conspiracy to distribute over five kilograms of cocaine and cocaine base, and of multiple counts of distribution of cocaine base. See 21 U.S.C. §§ 841, 846. He was sentenced to life imprisonment on the conspiracy charge, and to 20 years' imprisonment on each of the distribution counts to run concurrently with the life sentence. Rodgers appealed his conviction, and we affirmed. See Rodgers, 18 F.3d at 1432.

Thereafter, Rodgers filed his first motion to vacate his sentence pursuant to § 2255. The district court denied this motion on October 30, 1997. We declined to grant his request for a certificate of appealability on February 19, 1998. Rodgers now seeks leave to file a second motion pursuant to § 2255.

DISCUSSION

Section 2255 provides, in pertinent part, that
> A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain--
> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.
>
> 28 U.S.C. § 2255.

Rodgers asserts that his second motion properly falls under the second category. He argues that the Supreme Court, in Apprendi v. New Jersey, --- U.S. ----, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), stated a new rule of constitutional law which should be found to apply retroactively to his case. [FN1]

> FN1. In Apprendi, the Supreme Court held that any fact which increases a sentence beyond the statutory maximum, other than the fact of a prior conviction, must be pled and proven before a jury beyond a reasonable doubt. See Apprendi, 120 S.Ct. at 2355-56. We have no occasion to address the question of whether Apprendi states a new rule of constitutional law.

[1][2] We must deny Rodgers' motion. A second or successive petitioner under § 2255 may only claim the benefit of a new constitutional rule if the Supreme Court itself makes that rule apply retroactively. We simply lack the power, under § 2255, to adjudge the retroactivity of new rules of constitutional law for second and successive motions without Supreme Court guidance.

We have previously accepted review of Apprendi claims raised in initial § 2255 motions. However, this case presents a different question. In this case, we are *706 solely concerned with the language of § 2255 governing our ability to grant leave to file second or successive motions, which is limited by the plain language of the statute: "A second or successive motion must be certified as provided in section § 2244 by a panel of the appropriate court of appeals to contain--(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." This language specifically precludes us from retroactively applying a new rule of constitutional law to second or successive motions without the authority of the Supreme Court. Our review of initial § 2255 petitions is not so limited; a certificate of appealability pursuant to 28 U.S.C. § 2253 may be issued by this court or the district court "if the applicant has made a substantial showing of the denial of a constitutional right." This language imposes no conditions on our review. We may determine if a new rule of law as determined by the Supreme Court creates a "constitutional right," and if so, whether such rule retroactively applies to a case on initial collateral review. Again, the plain language of the statutes governs our authority.

**2 [3][4] We therefore deny Rodgers' petition because the Supreme Court has not made Apprendi retroactive to cases on collateral review, as required by the plain language of § 2255. As the Fourth Circuit has noted, "a new rule of constitutional law has been 'made retroactive to cases on collateral review by the Supreme Court' within the meaning of § 2255 only when the Supreme Court declares the collateral availability of the rule in question, either by explicitly so stating or by applying the rule in a collateral proceeding." In re Vial, 115 F.3d 1192, 1197 (4th Cir.1997) (quoting § 2255). Nowhere in the Apprendi decision itself, or in any subsequent decision, does the Supreme Court discuss Apprendi's retroactivity. Therefore, Apprendi is not available to a prisoner filing a second or successive petition under § 2255. [FN2]

> FN2. The same would also hold true for a second or successive habeas petition filed pursuant to 28 U.S.C. § 2244(b)(2)(A). Section 2244 employs the same key language, "made retroactive to cases on collateral review by the Supreme Court."

Our holding is consistent with those of several other circuits. See Talbott v. State of Indiana, 226 F.3d 866, 868-70 (7th Cir.2000) ("If the Supreme Court ultimately declares that Apprendi applies retroactively on collateral attack, we will authorize successive collateral review of cases to which Apprendi applies. Until then prisoners should hold their horses and stop wasting everyone's time with futile applications."); In re Joshua, 224 F.3d 1281, 1283 (11th Cir.2000) ("For a new rule to be retroactive, the Supreme Court must make it retroactive to cases on collateral review.... To date, the Supreme Court has not declared that Apprendi be applied retroactively to cases on collateral review.") (internal citations omitted); Sustache-Rivera v. United States, 221 F.3d 8, 15 (1st Cir.2000) ("[I]t is clear that the Supreme Court has not made the rule [in Apprendi ] retroactive to cases on collateral review....

229 F.3d 704  
(Cite as: 229 F.3d 704, *706, 2000 WL 1515167, **2 (8th Cir.(Ark.)))

Page 3

And so, Sustache's claim does not meet the requirements for a second or successive petition.") (internal citations omitted).

Because the Supreme Court has not made Apprendi retroactively applicable to cases on collateral review, Rodgers' application for leave to file a second § 2255 motion based on Apprendi is denied.

END OF DOCUMENT

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

226 F.3d 866
(Cite as: 226 F.3d 866, 2000 WL 1268166 (7th Cir.))

Page 4

United States Court of Appeals,
Seventh Circuit.

**Richard Dale TALBOTT, Applicant,**
v.
**State of INDIANA, Respondent.**

Nos. 00-3080, 00-3085.

Submitted Aug. 29, 2000
Decided Sept. 7, 2000

After his conviction for possession of ammunition despite multiple prior felony convictions, in connection with which he was classified as an armed career criminal for sentencing purposes based on prior state felonies, was affirmed on direct appeal, and his initial collateral attack was unsuccessful, defendant sought leave to commence successive collateral attack, based on new rule of constitutional law established by Supreme Court decision in Apprendi v. New Jersey. The Court of Appeals, Easterbrook, Circuit Judge, held that a defendant may not obtain approval for second or successive collateral attack based on Apprendi absent a declaration by Supreme Court that Apprendi rule applies retroactively.

Application denied.

West Headnotes

**[1] Criminal Law ⚖1668(9)**
110k1668(9)

Prisoners who already have filed and lost a collateral attack on their convictions need approval of Court of Appeals to launch another.

**[2] Criminal Law ⚖1668(3)**
110k1668(3)

**[2] Habeas Corpus ⚖894.1**
197k894.1

Retroactive application of a new rule of constitutional law must be declared by the Supreme Court itself for that rule to justify a second or successive collateral attack on conviction through motion to vacate sentence, or habeas corpus petition. 28 U.S.C.A. §§ 2244(b)(2)(A), 2255.

**[3] Criminal Law ⚖1668(3)**
110k1668(3)

**[3] Habeas Corpus ⚖894.1**
197k894.1

Prison inmate may not obtain approval of second or successive collateral attack on conviction, through motion to vacate sentence or habeas corpus petition, based on new rule of constitutional law established by decision of Supreme Court in Apprendi v. New Jersey under which any fact that increases penalty for crime beyond prescribed statutory maximum, other than fact of prior conviction, must be submitted to jury and proved beyond reasonable doubt, where there has not been declaration by Supreme Court that Apprendi rule applies retroactively. 28 U.S.C.A. §§ 2244(b)(2)(A), 2255.

**[4] Habeas Corpus ⚖895**
197k895

A dismissal of a request for leave to commence second or successive collateral attack on conviction through habeas corpus petition, on basis that new rule of constitutional law on which petitioner relies has not been declared retroactive by Supreme Court, is without prejudice, and does not bar a later request for leave after a retroactivity declaration is made. 28 U.S.C.A. § 2244(b)(1).

**[5] Criminal Law ⚖1668(1)**
110k1668(1)

**[5] Habeas Corpus ⚖894.1**
197k894.1

Federal law allows only one round of collateral review as of right, through either motion to vacate sentence or habeas corpus petition, so prisoners should choose their issues wisely. 28 U.S.C.A. §§ 2254, 2255.

**[6] Sentencing and Punishment ⚖11**
350Hk11

**[6] Sentencing and Punishment ⚖322**
350Hk322

**[6] Sentencing and Punishment ⚖329**
350Hk329

Under Apprendi, most circumstances increasing a statutory maximum sentence must be treated as elements of the offense, and, if the defendant has demanded a jury trial, must be established beyond a reasonable doubt to the jury's satisfaction.

226 F.3d 866
(Cite as: 226 F.3d 866, 2000 WL 1268166 (7th Cir.))

Page 5

**[7] Sentencing and Punishment** ⚖═668
350Hk668

**[7] Sentencing and Punishment** ⚖═973
350Hk973

**[7] Sentencing and Punishment** ⚖═988
350Hk988

Rule under Apprendi that most circumstances increasing a statutory maximum sentence must be treated as elements of the offense, and if the defendant has demanded a jury trial must be established beyond a reasonable doubt to the jury's satisfaction, does not affect application of relevant-conduct rules under Sentencing Guidelines to sentences that fall within a statutory cap. U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.

**[8] Sentencing and Punishment** ⚖═1311
350Hk1311

**[8] Sentencing and Punishment** ⚖═1318
350Hk1318

Validity of prior convictions is not open to reexamination at sentencing for a new offense, unless the defendant lacked counsel when convicted of the prior offenses.

**[9] Sentencing and Punishment** ⚖═1250
350Hk1250

When enhancing the sentences of repeat offenders, federal courts are entitled to treat the prior convictions as what they are, rather than as what defendants say they should have been.

**[10] Sentencing and Punishment** ⚖═1277
350Hk1277

Defendant's prior state felony conviction could be relied on to classify defendant as an armed career criminal for sentencing purposes following his federal weapons conviction, even if, as defendant claimed, his state conviction should have been a misdemeanor rather than a felony, where defendant did not contend that he lacked counsel during state prosecution. 18 U.S.C.A. § 924(e).

**[11] Criminal Law** ⚖═1556
110k1556

Rule in Custis that the validity of prior convictions is not open to reexamination at sentencing for a new offense, unless the defendant lacked counsel when convicted of the prior offenses, applies to collateral attacks as well as to sentencing and direct appeals.

**[12] Criminal Law** ⚖═1556
110k1556

**[12] Habeas Corpus** ⚖═253
197k253

Defendant who had received enhanced sentence following his federal weapons conviction after court relied on his prior state felony conviction to classify him as an armed career criminal for sentencing purposes could not wage collateral attack in federal court against state conviction which had been relied on in enhancing sentence through petition for writ of habeas corpus, since he was not in custody under that sentence, and could only seek federal collateral relief through motion to vacate sentence. 28 U.S.C.A. §§ 2254, 2255.

**[13] Criminal Law** ⚖═1573
110k1573

In any collateral attack on a conviction, the proper respondent is the prisoner's custodian.

**[14] Criminal Law** ⚖═1573
110k1573

Proper respondent in postconviction proceedings that do not contest current custody is the state's attorney general or the official most like a custodian.

**[15] Criminal Law** ⚖═1668(9)
110k1668(9)

Prison inmate's two applications for leave to commence successive collateral attacks, which were filed a day apart and made the same contentions, were best understood as a single application, and would be treated as such by Court of Appeals. 28 U.S.C.A. §§ 2244(b)(2)(A), 2255.

*868 Richard Dale Talbott (submitted on brief), pro se.

Karen M. Freeman-Wilson, Office of the Attorney General, Indianapolis, IN, for Respondent.

Before BAUER, EASTERBROOK, and MANION, Circuit Judges.

EASTERBROOK, Circuit Judge.

226 F.3d 866
(Cite as: 226 F.3d 866, *868, 2000 WL 1268166 (7th Cir.))

Page 6

**\*\*1** [1][2][3] Richard Talbott is among the throngs of state and federal prisoners who believe that Apprendi v. New Jersey, --- U.S. ----, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), undermines their sentences. Prisoners who already have filed and lost a collateral attack need this court's approval to launch another. Not one of the Apprendi-based applications for permission to file has been granted, however, and none is going to be granted in the near future, for a fundamental reason: a new decision of the Supreme Court justifies a second or successive collateral attack only if it establishes "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. §§ 2244(b)(2)(A), 2255 ¶ 8(2). We held in Bennett v. United States, 119 F.3d 470 (7th Cir.1997), that retroactive application must be declared by the Supreme Court itself. Although West v. Vaughn, 204 F.3d 53, 59-63 (3d Cir.2000), disagrees with Bennett **\*869** and holds that a decision of the Supreme Court is "retroactive to cases on collateral review" if its logic implies retroactivity under the approach of Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), we are not willing to depart from Bennett. Congress said that only new rules "made retroactive ... by the Supreme Court" (emphasis added) support successive petitions under § 2244(b)(2)(A) or § 2255 ¶ 8(2). Teague establishes standards that guide the Supreme Court in deciding whether a decision is retroactive; § 2244(b)(2)(A) or § 2255 ¶ 8(2) depart from pre-1996 law by specifying that only the Supreme Court may make that decision for purposes of successive collateral attacks. In West the third circuit confused a substantive question ("which decisions apply retroactively?") with a procedural question ("which court makes the retroactivity decision?"). Cf. Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). Justices don't have to recite the statutory language verbatim, but the choice between prospective and retroactive application belongs to the Supreme Court rather than to the court of appeals.

[4][5] Apprendi does not state that it applies retroactively to other cases on collateral review. No other decision of the Supreme Court applies Apprendi retroactively to cases on collateral review. So, given Bennett, no application based on Apprendi can be authorized under § 2244(b)(2)(A) or § 2255 ¶ 8(2). Accord, Sustache-Rivera v. United States, 221 F.3d 8 (1st Cir.2000). If the Supreme Court ultimately declares that Apprendi applies retroactively on collateral attack, we will authorize successive collateral review of cases to which Apprendi applies. Until then prisoners should hold their horses and stop wasting everyone's time with futile applications. (They are futile, not fatal under 28 U.S.C. § 2244(b)(1). As we held in Hernandez v. United States, --- F.3d ----, 2000 WL 1253528, No. 00-3048 (7th Cir. Sept. 1, 2000), a dismissal based on the fact that a case has not been declared retroactive is without prejudice for purposes of § 2244(b)(1).) What is more, prisoners now peppering district judges with initial collateral attacks based on Apprendi should reconsider: the itch to invoke the latest decision of the Supreme Court can be costly, because a loss will require this court's approval to launch a later collateral attack if better grounds for relief become available. Federal law allows only one round of collateral review as of right, so prisoners should choose their issues wisely.

[6][7][8] Many of the applications we have received have serious problems in addition to Bennett. Prisoners seem to think that Apprendi reopens every sentencing issue decided by a federal court in the last generation. It does not. All Apprendi holds is that most circumstances increasing a statutory maximum sentence must be treated as elements of the offense-- and, if the defendant has demanded a jury trial, this means that they must be established beyond a reasonable doubt to the jury's satisfaction. Apprendi does not affect application of the relevant-conduct rules under the Sentencing Guidelines to sentences that fall within a statutory cap. Thus, for example, when the statutory maximum is life imprisonment, Apprendi is beside the point. United States v. Smith, 223 F.3d 554, 564-66 (7th Cir.2000); Hernandez, --- F.3d at ----, slip op. 4. When a drug dealer is sentenced to less than 20 years' imprisonment--the limit under 21 U.S.C. § 841(b)(1)(C) for even small-scale dealing in Schedule I and II controlled substances--again Apprendi is irrelevant even if we eventually conclude, as United States v. Aguayo-Delgado, 220 F.3d 926 (8th Cir.2000), has held, that United States v. Jackson, 207 F.3d 910, 920-21 (7th Cir.2000), erred in concluding that the drug type-and-quantity rules of § 841(b) are sentencing factors rather than elements of the offense. To put this otherwise, Apprendi does not affect the holding of Edwards v. United States, 523 U.S. 511, 118 S.Ct. 1475, 140 L.Ed.2d 703 (1998), that the **\*870** judge alone determines drug types and quantities when imposing sentences short of the statutory maximum. And, more to the point of Talbott's application, Apprendi does not affect the holding of Custis v. United States, 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994), that the validity of prior convictions is not open to reexamination at sentencing for a new offense, unless the defendant lacked counsel

when convicted of the prior offenses.

**2 [9][10] Richard Talbott is serving a lengthy federal sentence for possessing ammunition despite multiple prior felony convictions. 18 U.S.C. § 922(g)(1). See United States v. Talbott, 78 F.3d 1183 (7th Cir.1996), decision after remand, 107 F.3d 874 (1997) (unpublished order). The length of the sentence, more than 22 years' imprisonment, stems from his prior felony convictions, which led to his classification as an armed career criminal under 18 U.S.C. § 924(e). We held on Talbott's prior appeals that the § 924(e) recidivist enhancement is proper. Talbott wants to revisit this subject, arguing that, under Apprendi, one of his prior felony convictions really should have been a misdemeanor conviction. As he interprets the state laws underlying his conviction for battery (for which he was sentenced to eight years' imprisonment), a sentence exceeding 180 days' imprisonment depends on findings that, as Talbott reads Apprendi, only a jury may make. Compare I.C. 35-50-3-3 (misdemeanor battery) with I.C. 35-42-2-1 (felony battery). Suppose this is so. Then there is a constitutional defect in the state felony conviction--but Talbott does not contend that he lacked assistance of counsel in the Indiana prosecution, so under Custis any shortcomings in the state prosecution are immaterial. When enhancing the sentences of repeat offenders, federal courts are entitled to treat the prior convictions as what they are, rather than as what defendants say they should have been.

[11] Perhaps Talbott believes that Custis is limited to the imposition of sentence and direct appeal, that its rule is avoidable by initiating a collateral attack on the prior conviction (which is what he appears to want) or by using § 2255 to contest the federal sentence. But we held in Ryan v. United States, 214 F.3d 877 (7th Cir.2000), that Custis applies to collateral attacks as well as to sentencing and direct appeals. Courts of appeals are divided on this subject, as the first paragraph in Ryan shows, and the Solicitor General has asked the Supreme Court to resolve the conflict. See United States v. Clark, 203 F.3d 358 (5th Cir.2000), petition for certiorari filed by the United States, 69 USLW 3110, 69 USLW 3115, No. 00-122; United States v. Daniels, 195 F.3d 501 (9th Cir.1999), petition for certiorari filed by Daniels and acquiesced in by the United States, --- U.S. ----, --- S.Ct. ----, --- L.Ed. 2d ----, 2000 WL 464117, No. 99-9136. If the Supreme Court ultimately disagrees with Ryan's understanding, and declares its new position retroactive on collateral attack, and holds Apprendi retroactive on collateral attack, then Talbott may be entitled to contest his sentencing as an armed career criminal. But while Ryan stands as the law of this circuit, Talbott cannot get to first base, and his Apprendi issue is way over at third base.

**3 [12][13][14] Two final observations. First, Talbott is mistaken in believing that he is entitled to wage a collateral attack in federal court directly against the Indiana sentence under 28 U.S.C. § 2254. He is not in custody under that sentence. See Maleng v. Cook, 490 U.S. 488, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989). His custody is federal, his ultimate objection is to the length of his federal sentence, and proceedings contesting that sentence must be under § 2255. Indiana may or may not be willing to entertain a petition for a writ in the nature of coram nobis, but Talbott must seek that relief from the state courts. Second, in any collateral attack the proper respondent is the prisoner's custodian. "The State of Indiana," which Talbott has named as respondent, is not his custodian *871 and is immune from suit under the eleventh amendment. The proper respondent in proceedings that do not contest current custody is the state's attorney general or the official most like a custodian. See Rule 2(a) and (b) of the Rules Governing Section 2254 Cases in the United States District Courts. But we do not deny Talbott's application for having attempted to use § 2254 rather than § 2255, or for having named as respondent the State of Indiana rather than the Attorney General of Indiana. Then he would just file more papers. We deny his application because, under Custis and Ryan, the holding of Apprendi would do him no good even if it had been declared retroactively applicable on collateral attack.

[15] We consolidate Talbott's two applications for leave to commence successive collateral attacks. Both documents, filed a day apart, make the same contentions and are best understood as a single application. That application is denied.

END OF DOCUMENT

CERTIFICATE OF SERVICE

I, SHELLEY L. GRANT, do hereby certify that a true and exact copy of the foregoing Government's Response to Petitioner's Motion to Vacate, Set Aside, or Correct Sentence has been served upon the defendant, CLEVELAND HANKERSON, Reg# 83507-020, USP-Lewisburg, Post Office Box 1000, Lewisburg, PA, 17837-1000, by first-class, United States mail on this 20th day of November, 2000.

By: SHELLEY L. GRANT
Paralegal Specialist